```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                  FORT MYERS DIVISION


IN RE THE COMPLAINT OF JAMES
SCHNEIDER, AS OWNER OF A 2005 34'
S2 YACHTS MOTOR VESSEL, IILN
SSUH4102G405, USCG OFFICIAL NO.
1267657, IN A CAUSE OF
EXONERATION FROM OR LIMITATION
OF LIABILITY,

          Petitioner.
                                     Case No: 2:21-cv-549-JES-KCD

                                            IN ADMIRALTY


_____
```

**OPINION AND ORDER**

This matter comes before the Court on review of Allstate Property and Casualty Insurance Company's Motion for Partial Summary Judgment, Statement of Material Facts, and Supporting Memorandum of Law (Doc. #94) filed on September 22, 2022. Petitioner James Schneider filed a Response in Opposition (Doc. #95) on October 12, 2022, as did third-party defendant Robert Slade (Doc. #96) on October 13, 2022.

This case involves the collision of two recreational vessels in heavy fog while they were underway in the Gulf of Mexico off the coast of Naples, Florida. One of the vessels, a 2005 34' S2 YACHTS (Pursuit) Motor Vessel, HIN# SSUH4102G405, USCG Official No. 1267657 – the "the Whiskey Tango Foxtrot" – was owned by

Petitioner James Schneider (Petitioner or Schneider). The second vessel, a 2019 24' Boston Whaler, HIN# BWCE1678A919 and Florida Registration No. FL6069SM – the "Paradox" – was owned by Julie Leonard (Leonard) and insured by Allstate Property and Casualty Insurance Company (Allstate). Due to the collision, both vessels suffered damage (Doc. #1, ¶ 8), and Leonard claims to have suffered bodily injuries that are either permanent or continuing in nature. (Doc. #12, ¶ 19.)

On July 20, 2021, Petitioner initiated this action seeking to exonerate or limit his liability pursuant to Limitation of Liability Act, 46 U.S.C. § 30505 (the Limitation Act)[1]. (Doc. #1.) Leonard filed an Answer and affirmative defenses on August 19, 2021, claiming that Schneider's negligence caused the collision between the vessels. (Doc. #12.) Allstate then filed an Answer, affirmative defenses, and a subrogated claim against Petitioner for damages to the Leonard vessel resulting from the collision.[2] (Doc. #21.) Leonard also filed a third-party complaint against

---

[1] "A shipowner can assert its right to limitation of liability in one of two ways. First, the shipowner can claim limitation by pleading it as a defense in an answer to a claim in any court. Alternatively, the shipowner can file a limitation of liability proceeding in federal district court." Martinez v. Reynolds, No. 21-11084, 2022 U.S. App. LEXIS 10035, at *15 (11th Cir. Apr. 14, 2022)(quoting El Paso Prod. GOM, Inc. v. Smith, 406 F. Supp. 2d 671, 675 (E.D. La. 2005)) (citations omitted).

[2] Allstate seeks to recover $165,012.20 in property damages. (Doc. #21, p. 11.)

2

Robert Slade (Slade), who was allegedly operating Petitioner's vessel at the time of the collision, for personal injury damages. (Doc. #58.) Petitioner and Third-party Defendant Slade[3] deny any liability with respect to the collision.

Allstate moves for partial summary judgment, arguing that the Limitation Act does not apply because of Schneider's negligence, and requests that this Court lift the stay so that Leonard and Allstate may litigate personal injury and property damage claims in state court. (Doc. #94, p. 2.) Petitioner and Slade argue there are material facts in dispute which would preclude an entry of summary judgment in this matter. (Docs. ##95, 96.) For the reasons set forth below, the motion is denied.

**I.**

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex

---

[3] Allstate's motion is not directed against third-party defendant Slade, however, Allstate argues that Slade was negligent in the operation of the Petitioner's vessel and that Petitioner negligently entrusted the vessel to Slade. (Doc. #94.) Slade therefore filed a Response to Allstate's motion, arguing there are disputed issues of fact as a reasonable fact-finder could find that Slade was not negligent and the collision was solely due to Leonard's negligence. (Doc. #96, p. 3.)

3

Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). However, "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." Solliday v. Fed. Officers, 413 F. App'x 206, 207 (11th Cir. 2011) (citation omitted). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the nonmoving party. Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). "If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir.

4

1983)). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1315 (11th Cir. 2007).

## II.

The material relevant facts (some of which are undisputed) are as follows:

On February 8, 2021, Leonard was bringing her vessel (the "Paradox") back to her residence from Marine Max (the Marina) in Naples, Florida, where it was being serviced. (Doc. #1, ¶ 10; Doc. #94-1, pp. 13, 15.) When Leonard left the Marina (around 4:30 p.m.), she did not turn the vessel's running lights on because it was "clear and sunny." (Doc. #94-1, pp. 18-20.) Leonard expected to reach her home by sunset — around 6:20 p.m. (Id.) During Leonard's voyage home, a dense, heavy fog came about — there was zero visibility, and it was getting darker. (Doc. #85-2, p. 10; Doc. #80, p. 20; Doc. #94-1, p. 28.)

Schneider and Slade were aboard Schneider's vessel (the "Whiskey Tango Foxtrot"); both men were going north to Naples to fish from a spot Schneider had selected. (Doc. #94-2, pp. 14-15.) Slade was operating Schneider's vessel for the first time.[4] (Id.,

---

[4] Although this was Slade's first time operating the Whiskey Tango Foxtrot, Slade had experience operating several vessels that

5

p. 15.) Slade had one beer on the vessel before lunch and one beer at lunch, while Schneider just had one beer several hours before the accident, which did not occur until between 5:30 p.m. and 6:30 p.m. (Id., pp. 16, 23; Doc. #85-2, pp. 22-23; Doc. #85-3, pp. 23-24.)

The remaining facts about what occurred prior to and during the collision between Leonard and Schneider's vessels are heavily disputed. Leonard claims that her average speed on the way home was under 20 mph, and that she was going 5 to 6 mph at the time of the collision between her and Schneider's vessels. (Doc. #94-1, pp. 20-21, 28.) Due to the fog, Leonard turned on her running lights, wrapped a bungee cord (safety lanyard) from the motor around her hand, put on a life jacket, and sounded her vessel's horn as much as she could (but not every two minutes).[5] (Id., pp. 29-30, 39.)

In contrast, Schneider and Slade allege that Leonard did not slow her vessel down prior to the collision – GPS data shows that

---

he owned, including a 22' Pontoon boat with 110 horsepower and a 19' Mastercraft with 260 horsepower. (Doc. #85-2, pp. 11-12.) Schneider and Slade boated together before in the Great Lakes. (Doc. #80, p. 56.) Slade did not have a Florida boating safety identification because Florida law does not require it for people born before January 1, 1988. (Doc. #85-2, p. 5.)

[5] Leonard alleges that she was familiar with a "boating requirement" to sound a vessel's horn every two minutes when in fog. (Doc. #94-1, pp. 30-31.)

6

Leonard's vessel was traveling at 29 mph at the time of the collision, and that Leonard's vessel was moving at that rate of speed, and up to 35 mph, in the six minutes before the collision. (Doc. #80, p. 21; Doc. #85-1, pp. 2-3.) Schneider recalled that the running lights on Leonard's vessel were not on prior to the collision, and that Leonard did not wrap the safety lanyard around her arm because her vessel kept running in circles after the collision. (Doc. #80, pp. 35, 39, 41.) Leonard also failed to sound her fog horn when she observed Schneider's vessel. (Doc. #94-1, p. 73.)

Leonard alleges that she saw Schneider's vessel about a hundred feet away; the two vessels were in a direct, head-on collision course.  Leonard saw a man was standing outside the center console. (Id., pp. 45-46, 49.) Leonard did not have time to reduce the speed of her vessel before the collision because she was trying to get out of the way.  (Id., p. 50.) Leonard believes that Schneider's vessel was going faster than her vessel. (Id., p. 66.) Upon impact of the two vessels, Leonard was knocked unconscious and does not recall her vessel going in circles or there being a second impact with Schneider's vessel.  (Id., pp. 51, 56.) Leonard did not recall seeing running lights on Schneider's vessel before impact. (Id., p. 63.) Following the collision, Leonard boarded Schneider's vessel and alleges that Schneider and Slade smelled of alcohol. (Doc. #94-1, p. 95.)

7

Schneider and Slade, on the other hand, state that right before the collision the two vessels were not headed directly towards one another – Schneider's vessel was heading due south while Leonard's vessel was heading north to northeasterly. (Doc. #80, pp. 20, 22.) Schneider's vessel was traveling less than 10 mph at the time of the collision. Schneider, who was acting as a "spotter," saw Leonard's vessel about three seconds before the collision. (Doc. #85, pp. 13-14; Doc. #94-2, pp. 16-18, 20.) Schneider yelled "boat, boat, boat," but Slade did not have time to turn the vessel and avoid the collision because Leonard was "going too fast" and there was "zero visibility."[6] (Doc. #80, pp. 20, 29; Doc. #94-2, p. 20; Doc. #95-2, pp. 12-13.) Schneider claims that his vessel's navigational lights were turned on at the time of the collision because he had set up all the lights while Slade was operating the vessel. (Doc. #80, p. 20; Doc. #85-2, p. 11.) Schneider and Slade deny that there is any evidence showing they were intoxicated at the time of the collision. According to both men, Leonard asked them not to call 911, and she did not call the police. (Doc. #94-1, p. 100.)

---

[6] Slade testified that he was familiar with the navigational rule which applies when two vessels are approaching each other in close proximity, and requires turning the vessel "starboard." (Doc. #85-2, p. 13.)

**III.**

**A. The Limitation Act**

The Limitation Act (the Act) "limits a vessel owner's liability for any damages arising from a maritime accident to the value of the vessel and its freight, provided that the accident occurred without such owner's 'privity or knowledge.'"[7] Beiswenger Enters. Corp. v. Carletta, 86 F.3d 1032, 1033-34 (11th Cir. 1996); In re Phillips, No. 2:19-CV-14070, 2020 U.S. Dist. LEXIS 109130, at *6 (S.D. Fla. Mar. 30, 2020). Specifically, the Act provides that the shipowner's liability "shall not exceed the value of the vessel and pending freight," at least for certain claims. 46 U.S.C. § 30505(a); see also Orion Marine Constr., Inc. v. Carroll, 918 F.3d 1323, 1325 (11th Cir. 2021). Qualifying claims are "those arising from any embezzlement, loss, or destruction of any property, goods, or merchandise shipped or put on board the vessel, any loss, damage, or injury by collision, or any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of the owner." Id. § 30505(b).

---

[7] Federal courts are vested with exclusive admiralty jurisdiction to determine whether a vessel owner may have limited liability under the Limitation Act. Beiswenger, 86 F.3d at 1036. See also Suzuki of Orange Park, Inc. v. Shubert, 86 F.3d 1060, 1063 (11th Cir. 1996)("A vessel owner's claim to limited liability must be adjudicated exclusively in the admiralty court, which sits without a jury.").

"[T]he Act functions by 'limiting the physically remote shipowner's vicarious liability for the negligence of his or her water-borne servants.'" Freedom Unlimited v. Taylor Lane Yacht & Ship, LLC, No. 20-11102, 2021 WL 3629904, 2021 U.S. App. LEXIS 24524, at *7-8 (11th Cir. Aug. 17, 2021) (quoting Suzuki of Orange Park, Inc., 86 F.3d at 1064).

In a proceeding under the Limitation Act, maritime torts are reviewed under a two-step analysis. First, the court "determine[s] what acts of negligence or conditions of unseaworthiness caused the accident." Martinez v. Reynolds, 2022 WL 1113001, 2022 U.S. App. LEXIS 10035, at *16 (quoting Tug Allie-B, Inc. v. United States, 273 F.3d 936, 944 (11th Cir. 2001) (citation and quotations omitted)). Liability is established only where the vessel owner's negligent acts were "a contributory and proximate cause of the accident." Hercules Carriers, Inc. v. Claimant State of Fla., 768 F.2d 1558, 1566 (11th Cir. 1985) (citing Bd. of Comm'rs of the Port of New Orleans v. M/V Farmsum, 574 F.2d 289, 297 (5th Cir.1978)). If the shipowner is free from any contributory fault, he is exonerated from all liability. See Am. Dredging Co. v. Lambert, 81 F.3d 127, 129 (11th Cir. 1996).

If negligence was at least partly what produced the accident, the court proceeds to the second step and determines whether the vessel owner had knowledge of or was in privity with the acts of negligence or conditions of unseaworthiness. Martinez, 2022 U.S.

10

App. LEXIS 10035, at *16 (citing Tug Allie-B, Inc., 273 F.3d at 944). "The damage claimants bear the initial burden of establishing liability (i.e., negligence or unseaworthiness), and the shipowner then bears the burden of establishing the lack of privity or knowledge." In re Phillips, 2020 WL 3315994, 2020 U.S. Dist. LEXIS 109130, at *10 (quoting Suzuki of Orange Park, Inc. v. Shubert, 86 F.3d 1060, 1062-63 (11th Cir. 1996)). If there is liability, but the vessel owner is entitled to limitation of liability, the "court oversees the distribution of the limitation fund among the damage claimants." Suzuki of Orange Park, Inc., 86 F.3d at 1063.

**IV.**

**A. Negligence or Unseaworthiness**

As the Court previously mentioned, "[t]he first step in determining a shipowner's entitlement to limitation of liability is to establish what acts of negligence or conditions of unseaworthiness caused the accident." Hercules Carriers, Inc., 768 F.2d at 1565. Allstate bears the initial burden of proving such negligence or unseaworthiness. Suzuki of Orange Park, Inc., 86 F.3d at 1063.

"Establishing negligence under either maritime or common law requires proving the same elements." In re Royal Caribbean Cruises Ltd., 991 F. Supp. 2d 1171, 1182 (S.D. Fla. 2013). "To prevail in a negligence action, the plaintiff must show: (1) that the defendant owed a duty of reasonable care to the plaintiff; (2)

11

that the defendant breached that duty; (3) that the breach was the proximate cause of the injury to the plaintiff; and (4) that the plaintiff suffered damages." Hasenfus v. Secord, 962 F.2d 1556, 1559-60 (11th Cir. 1992).

In their Answer, Allstate asserts that Schneider breached the duties owed in the operation of his vessel by (1) failing to maintain a proper lookout; (2) failing to proceed at a safe speed in reduced visibility caused by dense fog; (3) failing to sound his vessel's horn every two minutes (4) turning his vessel Port (right) rather than starboard; (5) failing to take action to avoid the collision; (5) failing to supervise and guide Slade's actions; and (6) failing to sound the danger signal (five short whistle blasts) upon observing Leonard's vessel. (Doc. #21, pp. 10-11.) Allstate argues that as a direct and proximate result of Schneider's negligence, the collision between the two vessels occurred and Leonard (and Allstate, as subrogee) suffered property damages. (Id., p. 11.)

While the Court agrees that the aforementioned facts *may* serve as a basis for Schneider's negligence and the proximate cause of the collision and damages, there are numerous material facts in dispute as to vessel speed, lighting, and pre-collision maneuvers that preclude such a finding as a matter of law. There is also ample contradictory evidence demonstrating that Leonard's actions – the speed at which she was traveling, whether her vessels' lights

12

were on, the lack of use of a foghorn, and the direction of her vessel – may have been negligent, and thus, the proximate cause for the collision between the vessels. Viewing the evidence in a light most favorable to Petitioner, the Court finds that the record shows that a genuine dispute of fact exists over whether Schneider was negligent and whether he was the proximate cause of the collision between the vessels.

### B. Lack of Privity or Knowledge

The Eleventh Circuit explained that "consistent with the statutory purpose to protect innocent investors, 'privity or knowledge' generally refers to the vessel owner's personal participation in, or actual knowledge of, the specific acts of negligence or conditions of unseaworthiness which caused or contributed to the accident." Suzuki of Orange Park, Inc., 86 F.3d at 1064. "The shipowner's privity or knowledge is not measured against every fact or act regarding the accident; rather, privity or knowledge is measured against the specific negligent acts or unseaworthy conditions that actually caused or contributed to the accident." Id. "[K]nowledge is not only what the shipowner knows but what he is charged with discovering in order to apprise himself of conditions likely to produce or contribute to a loss." Hercules Carriers, Inc., 768 F.2d at 1564.

Allstate argues that the record clearly shows Schneider had knowledge and privity of the negligent operation of his vessel

13

because Schneider not only negligently entrusted the operation of his vessel to Slade, he participated in the negligent operation of his vessel as well.[8]  (Doc. #94, p. 19.)

"There can be no 'privity or knowledge' unless the claimant can establish negligence." ROYAL CARIBBEAN CRUISES, LTD. v. ROYAL CARIBBEAN CRUISES, LTD., 55 F. Supp. 2d 1367, 1372 (S.D. Fla. 1999)(citing Farrell Lines, Inc. v. Jones, 530 F.2d 7, 10 (5th

---

[8] To the extent Allstate is arguing pursuant to Fecht v. Makowski, 406 F.2d 721 (5th Cir. 1969), that limitation of liability cannot be granted because it is otherwise impossible under any circumstances for Schneider to demonstrate the absence of privity or knowledge since Schneider was on his vessel at the time of the collision (Doc. #94, pp. 11-13, 20), the Court does not agree.  The Eleventh Circuit cautioned district courts from applying Fecht's reasoning too strictly and stated that "[t]he owner's presence [on a vessel] is not necessarily fatal to his right to limit if the evidence suggests that his conduct was in all respects prudent.'" Petition of M/V Sunshine, II, 808 F.2d 762, 763 (11th Cir. 1987). The Eleventh Circuit went on to conclude that:

> In short, in most circumstances negligence in operation will be sufficiently connected to the owner on board his own small vessel and operating it that he will be found to have privity or knowledge, but this common sense recognition of how the facts will usually work out is not an ineluctable doctrine to be applied at the **pleading stage, on conclusory and disputed allegations, as a substitute for the knowledge necessary to lead a court to rational decision**. The "owner at the helm" doctrine is a useful tool directed toward proper decision and not a talisman.

Id. (emphasis added).  In this case, there are many disputed material facts that preclude the Court from concluding that Schneider's presence on the vessel at the time of collision makes it impossible for Schneider to demonstrate the absence of privity or knowledge.

14

Cir. 1976)). Because a genuine dispute of fact exists over whether Schneider was negligent in operating his vessel and whether his negligence was the proximate cause of the vessel collision, the Court is unable to reach a determination of whether Schneider personally participated in or had actual knowledge of negligence. See Suzuki of Orange Park, Inc., 86 F.3d at 1064. Thus, the Court cannot conclude as a matter of law that "it is impossible under any set of circumstances for [Petitioner] to establish his lack of privity or knowledge" which would necessitate the limitation action be dismissed, and that Leonard and Allstate should be allowed to try liability and damages issues in state court. Id. The Court therefore denies Allstate's motion on this basis.

Accordingly, it is now

**ORDERED:**

Allstate Property and Casualty Insurance Company's Motion for Partial Summary Judgment, Statement of Material Facts, and Supporting Memorandum of Law (Doc. #94) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this   22nd   day of November, 2022.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Parties of record